*Tagged Opinion*



ORDERED in the Southern District of Florida on _____ Nov. 29 2016

Laurel Myerson Isicoff, Chief Judge
United States Bankruptcy Court

<br>

## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
## www.flsb.uscourts.gov

In re:

LEONIDAS ORTEGA T.,                    Case No.: 15-20614-LMI

     Debtor.                          Chapter 7

_____/

ROBERT A. ANGUEIRA, as Chapter
7 Trustee of the Bankruptcy Estate of
LEONIDAS ORTEGA T.,

     Plaintiff,

v.                                     Adv. No.: 16-1277-LMI

LEONIDAS ORTEGA TRUJILLO, *et al.*,

     Defendants.

_____/

## AMENDED[1] ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS COMPLAINT AND/OR MOTION FOR MORE

---

[1] This Order is being amended to attach *In re Haisfield*.

1

## **DEFINITE STATEMENT AND MOTION TO STRIKE**

This matter came before the Court for hearing on September 29, 2016, at 3:00 p.m., on the Defendants' Motion to Dismiss Complaint and/or Motion for More Definite Statement and Motion to Strike (the "Motion") (ECF #16). The Court has considered the Motion, the Trustee's response to the Motion (ECF #23), and Defendants' reply (ECF #24), and the argument of counsel. For the reasons set forth below, the Motion is Granted in Part and Denied in Part.

## **BACKGROUND**

The Debtor, Leonidas Ortega Trujillo (the "Debtor"), filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on June 11, 2015 (the "Petition Date"). On June 22, 2016, the Trustee filed an amended complaint (the "Amended Complaint") (ECF #4). The Trustee alleges that the Debtor, prior to, and continuing after the Petition Date, "has engaged in an complex, fraudulent scheme intended to shield and conceal his assets from his creditors ... and to avoid paying income taxes." (Amended Complaint ¶31.) The Debtor's largest creditor is Interamerican Asset Management Fund Limited, which holds a judgment of almost $600 million against the Debtor resulting from litigation against the Debtor that commenced in 1996. The Trustee alleges that the Debtor has utilized various corporate entities and a Panamanian foundation to carry out his scheme, including the other defendants in this action, TLG The Language Group, LLC ("TLG"), I.F. Multicultural Interactive Solutions, LLC ("IF MIS"), TL2 Travel Live & Learn, LLC ("TL2"), Infiservice Corp. ("Infiservice"), Grupo IF-USA Corp. ("Grupo IF"), Panama Investment Moon Corporation ("PIMC"), and LTG Foundation.

The Amended Complaint contains five counts. Count I is an action for alter ego and to pierce the corporate veil; Count II is for a Declaratory Judgment; Count III is for Turnover pursuant to 11 U.S.C. §542; Count IV is for an Accounting; and Count V is for an Equitable Lien or

2

Constructive Trust.

## DISCUSSION

On August 15, 2016, the Defendants filed the Motion that is currently before the Court. In the Motion, the Defendants contend that (1) the Trustee failed to state a claim upon which relief can be granted for a number of the Counts; (2) the Trustee lacks standing to assert a claim for alter ego and piercing the corporate veil; and (3) the Counts for turnover and accounting are, at a minimum, premature. Consequently, the Defendants seek dismissal of the Amended Complaint. Alternatively, the Defendants request a more definite statement. The Defendants also request that this Court strike certain fraud related allegations from the Amended Complaint.

## Alter Ego

In Count I of the Amended Complaint, the Trustee asserts that LTG Foundation, TLG, IF MIS, Infiservice, TL2, Grupo IF, and PIMC are alter egos of the Debtor and seeks to pierce the corporate veil (*See* Amended Complaint. 48-52.) Based on these allegations, the Trustee seeks entry of a judgment (i) determining that LTG Foundation, TLG, IF MIS, Infiservice, TL2, Grupo IF, and PIMC are alter egos of the Debtor; (ii) determining that the Debtor used LTG Foundation, TLG, IF MIS, Infiservice, TL2, Grupo IF, and PIMC for a fraudulent and improper purpose causing injury to the Estate; and (iii) piercing the corporate veil.

The Defendants argue that the Trustee lacks standing to assert this claim, and this claim should be dismissed. The Defendants rely on this Court's ruling in *In re Kodsi*, 2015 WL 222493 (Bankr. S.D. Fla. 2015), where this Court held that a trustee, in the shoes of an individual debtor, lacked standing to assert an alter ego claim against a corporate entity that he or she alleges is being used as a mere instrumentality. The Court based its ruling, in part, on the Court's opinion that,

3

intuitively, it does not make sense that such a cause of action *could* exist. A bankruptcy trustee steps into the shoes of the debtor; thus, the trustee of an individual debtor bankruptcy should only be able to bring an alter ego action if an individual could bring an alter ego action against one of its own corporate entities. That didn't seem logical. Moreover, neither the Court, nor the parties in the *Kodsi* litigation, could find any cases in Florida, or any other state, holding that an individual could bring such a claim. However, having looked at the issue again, and after additional analysis, the Court recedes from its initial opinion in *Kodsi*[2].

In *In re Icarus Holding, LLC*, the Eleventh Circuit Court of Appeals held that "in order to bring an alter ego action under section 541, a bankruptcy trustee's claim should (1) be a general claim that is common to all creditors and (2) be allowed by state law." 391 F.3d 1315, 1321 (11th Cir. 2004) (*Icarus I*).

At this initial pleading stage there is no dispute that the Trustee asserts the alter ego claim on the behalf of the Estate as a claim common to all creditors. *See Id.* at 1321 (finding that alter ego action was a claim common to all creditors because the debtor's assets had been "looted," so that the harm was not to a single creditor); *In re Xenerga, Inc.*, 449 B.R. 594, 598-99 (Bankr. M.D. Fla. 2011) (finding that the alter ego claim was a general claim common to all creditors where the alleged injury was to the debtor itself, and not to a particular creditor, because the conduct of the principals wrongfully depleted the debtor's assets).

The dispute is the second prong of *Icarus I*, as the Trustee only has standing to bring the alter ego claim if the claim is allowed by Florida law. The Defendants argue, based on this Court's ruling in *Kodsi*, that Florida law does not allow the trustee in the case of an individual debtor to

---

[2] A Motion for Reconsideration of Order Granting in Part and Denying in Part Motion to Dismiss (ECF #55) was filed in the Kodsi case (Case No.14-1763) but the parties settled before the Court had the opportunity to address the motion.

4

assert an alter ego claim against the debtor's purported alter egos, even if such a claim may be allowed in a corporate debtor case. The Trustee cited several cases to convince this Court that it should recede from *Kodsi*, only one of which this Court finds relevant and persuasive.[3]

In *In re Haisfield*, Case No. 3:13-ap-00065-PMG (Bankr. M.D. Fla. Oct. 12, 2016), an unpublished opinion[4] the bankruptcy court held that the creditors' committee, suing derivatively on behalf of the individual debtors, had standing to assert alter ego claims against the debtors' alleged alter ego corporate entities. The court reviewed the various cases on this issue and observed the following:

> [T]he key factors for a trustee to bring an alter ego action are (1) the debtor's abuse of separate entities or business forms, and (2) the action's remedial purpose to address the injury to creditors caused by the abuse. . . . [T]herefore, it appears that the purpose of an alter ego claim may apply both to individual and corporate debtors, as long as the trustee shows that the debtor engaged in inequitable conduct by abusing separate entities to injure all of the debtor's unsecured creditors.

\*at 10. While this principal is sound as stated, nonetheless, the Florida case that is recognized as the source of the law for alter ego and veil piercing – *Dania Jai-Alai Palace, Inc, v, Sykes,* 450 So. 2d 1114 (Fla. 1984) – deals with veil piercing only between corporate entities. Thus it is important

---

[3] The Trustee cited *Gilbert v. Doris R. Corp.*, 111 So. 2d 682 (Fla. 3d DCA 1959) (holding that individual shareholders of a corporation could disregard the corporate form and assert that a loan made to their corporation was usurious where the lender insisted that the shareholders incorporate an entity to receive the proceeds—even though the proceeds were for the individual shareholders' benefit—solely to avoid the lower usury rate for individual borrowers); however this is not an alter ego case at all, but rather, a case creating an equitable remedy. *See Dania Jai-Alai Place, Inc. v. Sykes,* 450 So. 2d 1114, 1118 (Fla. 1984) discussing *Levenstein v. Sapiro,* 279 So. 2d 858 (Fla. 1973). The Trustee also cited *In re Checiek*, 492 B.R. 918 (Bankr. M.D. Fla. 2013) (recognizing that Florida law allows an individual to veil pierce its own corporation, but denying the relief on the merits); but the *Checiek* court relied on the *Gilbert* opinion, which is not, as already explained, an alter ego case. The Trustee also cited *Bakst v. Smokemist, Inc. (In re Gladstone),* 513 B.R. 149 (Bankr. S.D. Fla. 2014) which case only held that a trustee's cause of action for determination that assets owned by artificial entities created by the debtor were included in property of the estate was a core bankruptcy proceeding; there is no indication in the opinion that the existence of the cause of action was ever disputed or considered. Finally, the Trustee cited a New York case, *Pergament v. Yerulshami (In re Yerulshalmi),* 487 B.R. 98, 106 (Bankr. E.D.N.Y. 2012) which case authorized a chapter 7 trustee of an individual debtor estate to bring an alter ego/reverse veil piercing claim on behalf of the bankruptcy estate pursuant to section 541 of the Bankruptcy Code. However, the bankruptcy court relied on corporate veil piercing cases with no explanation why those cases should apply equally in an individual veil piercing case.

[4] The Trustee did not provide a copy of the opinion, but the Court is confident that the opinion located by the Court's staff is the opinion on which the Trustee relies. A copy of the opinion is attached to this Order.

to go back to *Dania Jai-Alai*, to determine whether the Florida law on veil piercing is limited to collapsing corporate entities for the benefit of creditors of the corporation.

In *Dania Jai-Alai* the Florida Supreme Court looked at many of its cases on veil piercing in holding that its precedent required a showing of improper conduct in order to pierce the corporate veil. 450 So. 2d at 1121. In reaffirming its prior holdings, the Florida Supreme Court re-examined *Biscayne Realty & Ins. Co. v. Ostend Realty Co.*, 148 So. 560 (Fla. 1933). In *Biscayne Realty* the Florida Supreme Court held

> If the stockholders of a corporation enter into a transaction in their individual and private interests, and utilize the name of the corporation merely as a convenience for the completion of the transaction, where the legal entity as such has no interest in the matter, but the name is used to mislead creditors or perpetrate a fraud upon them, the legal entity in the name of which the transaction was carried will be ignored and the parties held to individual liability.
>
> This doctrine is but the logical sequence of the principle that a corporation cannot be formed for the purpose of accomplishing a fraud, or other illegal act, under the guise of the fiction that a corporation is a legal entity separate and distinct from its members. When this is attempted, the fiction will be disregarded by the courts and the acts of the real parties dealt with as though no corporation had been formed.

148 So. at 564-565(citations omitted). Thus *Biscayne Realty* makes clear that the focus of veil piercing, as highlighted by Judge Glenn in *Haisfield,* is the injury to creditors, whether those creditors be of the corporate entity or of the individual shareholder or member – the focus is on the abuse of the corporate structure. Accordingly, this Court recedes from its holding in *Kodsi* with respect to its holding that Florida law does not recognize veil piercing and alter ego as remedies when the debtor is an individual.

The *Haisfield* court also addressed an issue that this Court did not need to decide in *Kodsi* - that is, whether the bankruptcy trustee ever has standing to bring an alter ego claim, or whether, since the trustee is "standing in the shoes of the debtor", that claim may only be brought by

6

individual creditors. The Court addressed this briefly in the *Kodsi* opinion and discussed the narrow and broad interpretations of *Seminole Boatyard, Inc. v. Christoph*, 715 So. 2d 987 (Fla. 3d DCA 1998). Now having to address this issue directly, this Court agrees with Judge Glenn's conclusion in *Haisfield* and with Judge Olson's conclusion in *Brown v. Luboff (In re: Sigma-Tech Sales, Inc.),* 2016 WL 4224090 (Bankr. S.D. Fla. 2016), that the Trustee does have authority to bring the alter ego claim.

In the Complaint, the Trustee has alleged that the Debtor has abused the business forms of the defendant corporate entities to the detriment of the Debtor's creditors and the Estate and seeks to redress the abuse with the alter ego claim. These allegations fit within the framework of the cause of action.

Accordingly, the Motion is denied with respect to Count I of the Amended Complaint.

## Declaratory Judgment

In Count II of the Amended Complaint, the Trustee seeks entry of a declaratory judgment that (i) the Debtor is the true owner of LTG Foundation, TLG, IF MIS, Infiservice, TL2, Grupo IF, and PIMC; (ii) the Debtor's ownership interest is property of the Estate; and (iii) the Debtor holds his interest in LTG Foundation, TLG, IF MIS, Infiservice, TL2, Grupo IF, and PIMC in trust for the benefit of the Estate. The Defendants argue that the Trustee failed to adequately allege a claim for declaratory relief. The Court agrees, as the Amended Complaint fails to include sufficient factual allegations, accepted as true at this stage of the proceedings, demonstrating that the Trustee is entitled to the relief he seeks in this Count.

Accordingly, the Motion is granted with respect to Count II of the Amended Complaint.

## Turnover

The Defendants argue that unless and until this Court makes a determination and/or finding

7

that LTG Foundation, TLG, IF MIS, Infiservice, TL2, Grupo IF, and PIMC are property of the Estate, the Trustee is not entitled to turnover, thus, the Trustee's count for turnover is premature. The Trustee correctly counters that turnover can be sought in the same complaint that seeks to establish that the property subject of turnover is property of the estate. In this Amended Complaint, the Trustee sought—in Count I—an alter ego and veil piercing claim against LTG Foundation, TLG, IF MIS, Infiservice, TL2, Grupo IF, and PIMC. Additionally, in Count II of the Amended Complaint, the Trustee sought a declaration that LTG Foundation, TLG, IF MIS, Infiservice, TL2, Grupo IF, and PIMC are property of the Debtor and, therefore, property of the Estate. If the Trustee succeeds on either of those counts, then the conditions precedent for relief under the turnover count have been met.

Accordingly, the Motion is denied with respect to Count III of the Amended Complaint.

## Accounting

The Defendants argue that the Trustee's claim for an accounting relating to LTG Foundation, TLG, IF MIS, Infiservice, TL2, Grupo IF, and PIMC should be dismissed because (1) an accounting is premature until this Court makes a determination that LTG Foundation, TLG, IF MIS, Infiservice, TL2, Grupo IF, and PIMC are property of the Estate; and (2) if the Trustee wants to seek discovery from LTG Foundation, TLG, IF MIS, Infiservice, TL2, Grupo IF, and PIMC, the Trustee should seek such discovery or information in the main bankruptcy case. As the Plaintiff admits that the basis for an accounting would be solely related to his success in obtaining turnover, the request for an accounting is premature. 11 U.S.C. §542(a) provides that an entity in possession, custody or control of property of the estate shall deliver to the trustee, and account for, such property or the value of such property. In this case, any accounting regarding the value of the assets that the Trustee is seeking to be turned over to the estate, is not relevant, unless and until

the Trustee successfully prosecutes his claims in this case and the Court awards the Trustee turnover of the assets. Moreover, the Trustee has voluntarily agreed to dismiss his claim for an accounting. However, this shall not preclude the Trustee from seeking an accounting in connection with Count III of the Complaint (Turnover) pursuant to 11 U.S.C. §542(a).

Accordingly, the Motion is granted with respect to Count IV of the Amended Complaint.

### Equitable Lien/Constructive Trust

The Defendants argue that the Trustee failed to adequately allege a claim for an equitable lien or constructive trust relating LTG Foundation, TLG, IF MIS, Infiservice, TL2, Grupo IF, and PIMC. The Court agrees, as the Amended Complaint fails to include sufficient factual allegations, accepted as true at this stage of the proceedings, demonstrating that the Trustee is entitled to the relief he seeks in this Count.

Accordingly, the Motion is granted with respect to Count V of the Amended Complaint.

### Motion to Strike/Motion for More Definite Statement

The Defendants' Motion to Strike and/or Motion for More Definite Statement is Denied.

### CONCLUSION

In sum, the Motion is granted in part and denied in part. The Trustee shall have thirty days from the date of this Order to file a Second Amended Complaint, and the Defendants shall have twenty-one days thereafter to file a response to the Second Amended Complaint.

###

Copies furnished to:

Corali Lopez Castro, Esq.
(Attorney Lopez-Castro is directed to serve a copy of this order on all interested parties and file a certificate of service)

9

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

In re:                                                    Case No. 3:11-bk-8765-PMG


Richard Haisfield
and Audrey L. Haisfield,

_____ Debtors.              Chapter 11


Official Committee of Unsecured Creditors
of Richard Haisfield and Audrey L. Haisfield,

                          Plaintiff,

vs.                                                       Adv. No. 3:13-ap-65-PMG


1st Choice Breeding, LLC, et al.,

_____ Defendants.


**ORDER ON MOTION TO DISMISS VARIOUS COUNTS**
**OF FIRST AMENDED COMPLAINT**


**THIS CASE** came before the Court for hearing to consider the Motion of eight Defendants to Dismiss Various Counts of the Plaintiff's First Amended Complaint for Failure to State a Claim upon which Relief Can Be Granted and Lack of Standing. (Docs. 3, 168).

The Plaintiff, the Official Committee of Unsecured Creditors, filed the Amended Complaint to avoid a number of transfers and to obtain other relief, based on an alleged Fraudulent Transfer Scheme involving thirty-seven Defendants.

1

Count 1 of the Amended Complaint is an action for alter ego liability. The Plaintiff has standing to bring the alter ego action, because (1) the Plaintiff asserts the cause of action on behalf of the estate as a claim common to all creditors, and because (2) the claim is allowed by Florida law. Consequently, the Defendants' Motion to Dismiss Count 1 should be denied.

Counts 3 through 134 of the Amended Complaint are actions for the avoidance of transfers, and the Defendants request the dismissal of approximately 74 of the avoidance Counts. The Defendants' request to dismiss the fraudulent transfer claims should be denied, because the Court cannot determine whether the property allegedly transferred to the Defendants was property of the Debtors, as required by the fraudulent transfer statutes, until the alter ego claim is resolved.

Count 2 of the Amended Complaint is an action for civil conspiracy. The Court previously dismissed Count 2, because the Amended Complaint does not specifically allege either the details of the conspiracy or each Defendant's participation in the conspiracy.

Accordingly, the Motion to Dismiss should be denied as to Count 1 and the fraudulent transfer counts, and granted as to Count 2 of the Amended Complaint.

### Background

The Debtors, Richard and Audrey Haisfield, filed a petition under Chapter 11 of the Bankruptcy Code on December 2, 2011.

On April 13, 2012, the United States Trustee appointed a Committee of Creditors Holding Unsecured Claims. (Main Case, Doc. 58).

On June 12, 2012, the Committee filed a Motion Seeking Derivative Standing and Authorization to Pursue Avoidance Actions on Behalf of the Estates, and the Motion was granted on November 30, 2012. (Main Case, Docs. 79, 149).

2

On March 19, 2013, the Committee/Plaintiff filed a First Amended Complaint for Avoidance of

Transfers, for Damages, and for Other Relief. (Doc. 3). The Amended Complaint is 209 pages in

length, and names 37 individuals or entities as Defendants.

In the Introduction to the Amended Complaint, the Plaintiff alleges:

> 1. The Debtors are in the business of breeding and selling racehorses. In 2006, the
> Debtors represented to creditors that they had total assets of $102,300,000 and a net
> worth and equity of $40,000,000 in order to induce those creditors to lend money to
> them. Since that time, the Debtors, with the aid of their relatives, have fraudulently
> transferred approximately $21,000,000 (a conservative estimate) in assets for the
> purpose of defrauding creditors and evading payment of their debts (the "Fraudulent
> Transfer Scheme").
>
> 2. Under the Fraudulent Transfer Scheme, many of the transfers were executed or
> funneled through bogus entities which the Debtors or their relatives created or utilized
> to make it appear that the transfers were bona fide, but which were in actuality shell
> companies that simply served as the alter egos of the Debtors and conduits to commit
> the fraud.

(Doc. 3, ¶¶ 1, 2). According to the Amended Complaint, the Fraudulent Transfer Scheme included (1)

the "wholesale" transfer of the Debtors' assets to new limited partnerships controlled by the Debtors;

(2) the transfer of interests in certain of the Debtors' companies to Mr. Haisfield's sons; (3) the

transfer of certain ownership interests in a thoroughbred stallion, or the proceeds of the interests, to

Mr. Haisfield's sons; and (4) the transfer of the Debtors' interests in other horses to intermediate

companies, followed by the subsequent transfer of those companies to Mr. Haisfield's sons. (Doc. 3, ¶

6).

The Amended Complaint contains 138 Counts. Generally, Count 1 is an action for alter ego

liability and to pierce the corporate veil; Count 2 is an action for civil conspiracy; Counts 3 through

134 are actions for the avoidance of transfers; Counts 135 through 137 are actions for injunctive relief;

and Count 138 was an action for an accounting that was dismissed on April 23, 2014.

3

### Discussion

On June 21, 2016, eight Defendants filed the Motion to Dismiss that is currently before the Court. In the Motion, the Defendants contend that a number of the Counts in the Amended Complaint fail to state a claim upon which relief can be granted, and also contend that the Plaintiff lacks standing to assert the alter ego claim.

> In particular, the Committee seeks to recover alleged fraudulent transfers of **non-debtor** property from the Movants, and also asserts a count of civil conspiracy for perpetuating a "fraudulent transfer scheme." Neither cause of action is recognized under the Bankruptcy Code or Florida law. In an effort to cure those deficiencies, the Committee also alleges that various transferor entities are the alter egos of the debtors in this case, Richard and Audrey Haisfield (the "Debtors"), and transfers of such entities' property to the Movants are therefore avoidable. However, Florida law does not recognize a cause of action in which an individual debtor can sue his own affiliates as alter egos, and the Committee lacks standing to assert such a claim in any event.

(Doc. 168, p. 3)(Emphasis in original). Consequently, the Defendants seek the dismissal of the alter ego claim in Count 1, the conspiracy claim in Count 2, and approximately 74 of the 132 fraudulent transfer Counts. (Doc. 168, ¶ 5).

The Motion to Dismiss should be denied as to the alter ego and fraudulent transfer Counts, and granted as to the civil conspiracy Count.

### A. Count 1 – Alter ego

In the Amended Complaint, the Plaintiff identifies and collectively defines 26 entities as "Debtors' Entities." (Doc. 3, ¶ 46, n.2). In Count 1, the Plaintiff alleges, among other allegations:

> 282. The Debtors, as the owners, operators, officers, managers, and/or directors of the Debtors' Entities, have abused and disregarded the corporate entity of each of the Debtors' Entities and have made them instrumentalities of their affairs.

> 283. Such unity of interest, operation, control, and/or ownership exists among the Debtors and the Debtors' Entities that the separate affairs and personalities of the Debtors and the Debtors' Entities no longer exist.

4

. . .

287. The Debtors operated the Debtors' Entities for their benefit and engaged in the Fraudulent Transfer Scheme to commingle and intertwine their financial affairs with the Debtors such that they served as the alter ego of the Debtors.

288. The Debtors in combination with the other Defendants have acted in concert to intentionally abuse the corporate form of each of the Debtors' Entities in order to defeat justice, perpetrate actual or constructive fraud, and evade contractual responsibility on preexisting liabilities.

(Doc. 3, ¶¶ 280-294). Based on the allegations, the Plaintiff seeks the entry of a judgment (1) piercing the veil of the Debtors' Entities, (2) determining that the Debtors' Entities are the alter egos of the Debtors, (3) determining that the Debtors' Entities are liable for the Debtors' debts, including the fraudulent transfers alleged in the Amended Complaint, and (4) determining that the assets of the Debtors' Entities are property of the Debtors' bankruptcy estate. (Doc. 3, pp. 63-64).

The Defendants assert that Count 1 should be dismissed, because the Plaintiff lacks standing to bring an alter ego action against the Debtors' Entities. The Motion to Dismiss the alter ego action should be denied.

In In re Icarus Holding, LLC, 391 F.3d 1315 (11th Cir. 2004), the Eleventh Circuit Court of Appeals considered the issue of standing to bring an alter ego action in a Chapter 11 case and concluded:

Like many courts that have addressed this issue, we hold that in order to bring an exclusive alter ego action under section 541, a bankruptcy trustee's claim should (1) be a general claim that is common to all creditors and (2) be allowed by state law.

In re Icarus Holding, LLC, 391 F.3d at 1321. The "Eleventh Circuit has held that an alter ego action is §541 property of the estate if it is common to all creditors and if state law allows the corporate entity to bring that action." In re C.D. Jones & Company, Inc., 2015 WL 2260707, at 4 (Bankr. N.D.

5

Fla.)(citing In re Icarus Holdings, LLC, 391 F.3d 1315, 1321 (11th Cir. 2004)). "A bankruptcy trustee

has standing to bring an alter ego claim pursuant to section 541 of the bankruptcy code when the

trustee's claim is (1) a general claim common to all creditors and (2) allowed by state law (together the

'*Icarus* Test')." In re Sigma-Tech Sales, Inc., 2016 WL 4224090, at 1 (Bankr. S.D. Fla.)(quoting In re

Icarus Holdings, LLC, 391 F.3d at 1321).

In this case, the Plaintiff has standing to bring the alter ego action, because (1) the Plaintiff asserts

the cause of action on behalf of the estate as a claim common to all creditors, and because (2) the claim

is allowed by Florida law.

### 1. Claim common to all creditors

First, the Plaintiff asserts the alter ego action on behalf of the Debtors' Chapter 11 estate as a

claim common to all creditors.

The Plaintiff is the Official Committee of Unsecured Creditors that was appointed by the United

States Trustee in the Debtors' Chapter 11 case on April 13, 2012. (Main Case, Doc. 58). Accordingly,

the Plaintiff has the powers and duties of such committees pursuant to §1103 of the Bankruptcy Code.

11 U.S.C. §1103.

On June 12, 2012, the Committee filed a Motion Seeking Derivative Standing and Authorization

to Pursue Avoidance Actions on Behalf of the Estates. (Main Case, Doc. 79). In the Motion, the

Committee alleged:

> 13. [T]he Committee has concluded that it is in the best interest of the Estates and
> the unsecured creditors of the Haisfields that the Committee pursue avoidance actions
> against various persons and/or entities who received fraudulent transfers directly or
> indirectly from the Haisfields within the applicable statutes of limitation. . . .
>
> . . .

6

> 16. The Committee files this Motion seeking derivative standing to pursue avoidance actions <u>on behalf of the Estates</u>. <u>The benefit to the Estates would be the return of their core assets and their worth to maximize the overall value of the Estates</u>.

(Main Case, Doc. 79, ¶¶ 13, 16)(Emphasis supplied).    Consequently, the Plaintiff requested authorization "to pursue avoidance actions <u>on behalf of the Estates</u> against the recipients of transfers by or from the Haisfields, directly or indirectly." (Main Case, Doc. 79, p. 13)(Emphasis supplied).

The Motion was granted on November 30, 2012. (Main Case, Doc. 149). In the Order on the Motion, the Committee was "granted derivative standing to pursue the Avoidance Actions <u>on behalf of the Estates</u>," and to "bring additional avoidance claims thereafter should the Committee deem it in the best interest of the Estates to do so." (Main Case, Doc. 149, pp. 2-3)(Emphasis supplied).

On March 19, 2013, the Committee, as Plaintiff, filed the Amended Complaint for Avoidance of Transfers, for Damages, and for Other Relief, and included the alter ego claim in Count 1. (Doc. 3).

Under these circumstances, the Court finds that the Plaintiff is asserting the alter ego action as a general claim common to all creditors within the meaning of the Eleventh Circuit's decision in <u>Icarus</u>.

In <u>Icarus</u>, for example, the Eleventh Circuit found that the alter ego action was a claim common to all creditors because the debtor's assets had been "looted," so that the harm was not limited to a single creditor. Instead, all of the debtor's creditors had an interest in the action, and liability extended to all creditors without regard to dealings with a particular creditor. <u>In re Icarus Holdings, LLC</u>, 391 F.3d at 1321. Similarly, in <u>In re Xenerga, Inc.</u>, 449 B.R. 594, 598-99 (Bankr. M.D. Fla. 2011), the Court found that an alter ego claim was a general claim common to all creditors where the alleged injury was to the debtor itself, and not to a particular creditor, because the conduct of the principals wrongfully depleted the debtor's assets. Consequently, the injury was suffered generally by all creditors, and was not an injury specific to any one creditor.

7

In this case, as in Icarus and Xenerga, the Plaintiff alleges that the actions of the Debtors had the purpose and effect of removing or misappropriating assets from the Debtors or the Debtors' estate. (See Doc. 3, ¶¶ 289, 291). Accordingly, the Plaintiff is attempting to avoid the alleged transfers to the Defendants for the benefit of the Debtors' Chapter 11 estate, for distribution to all creditors based on the priorities established in the Bankruptcy Code, and is not seeking to avoid the transfers for the benefit of any specific creditors. See In re C.D. Jones & Company, Inc., 2015 WL 2260707, at 4(Fraudulent transfer claims pass the Icarus test if they allege damages that are suffered generally by all creditors of the debtor.).

The Committee of Unsecured Creditors as the Plaintiff was authorized to bring the avoidance actions on behalf of the bankruptcy estate, not any particular creditor, and the alter ego claim is a general claim common to all creditors of the estate.

### 2. Allowed by state law

Second, the alter ego action asserted by the Plaintiff is allowed by Florida law.

Under the second prong of the Icarus test, a trustee has standing to bring an alter ego action if the claim is allowed by state law. According to the Defendants, Florida law does not allow the trustee in the case of an individual debtor to pursue an alter ego claim against the individual debtor's alleged alter egos, even though such a claim may be allowed in the case of a corporate debtor. To support their contention, the Defendants primarily rely on the decision in In re Kodsi, 2015 WL 222493, at 5 (Bankr. S.D. Fla.). In Kodsi, the Court stated:

> At issue is whether an individual may sue an entity as an alter ego of him or herself. Intuitively, it does not make sense that such a cause of action *could* exist. Moreover, there do not appear to be any cases, in Florida or any other state, holding that an individual may bring an alter ego claim against him or herself or against a corporate entity that he or she alleges is being used as a mere instrumentality. Therefore, it is

8

without dispute that a bankruptcy trustee, in the shoes of an individual debtor, has no such claim either.

In re Kodsi, 2015 WL 222493, at 5(Emphasis in original). The Court in Kodsi dismissed the alter ego claim, therefore, because it found that the second prong of the Icarus test had not been satisfied.

In In re Checiek, 492 B.R. 918 (Bankr. M.D. Fla. 2013), however, the Court found that veil piercing may be used by individual shareholders under Florida law, if the corporate form has been used improperly by the party against whom the veil piercing remedy has been sought. According to the Court in Checiek, Florida law recognizes the remedy of veil piercing by an individual shareholder, as long as there is "evidence that the corporate form was used for a fraudulent or improper purpose." In re Checiek, 492 B.R. at 921.

Based on the conclusion in Checiek, therefore, as well as the reasoning in Xenerga and Sigma-Tech Sales, the Court finds that Florida law allows the Plaintiff in this case to bring an alter ego action against the Debtors' Entities.

The Court in Xenerga, for example, focused on the purpose of the veil-piercing cause of action:

> Under Florida case law, the purpose of an alter ego action or an action to "pierce the corporate veil" is to disregard the corporate entity in circumstances where it would be inequitable to allow a corporation's principals to hide behind the corporate form. . . . As such, under Florida law, an injured party may pierce the corporate veil if insiders abuse the corporate form and injured a party. Trustees who represent the interest of all unsecured creditors of a debtor corporation are in the best position to assert claims against abusive insiders who have harmed the general creditor body as a whole. Therefore, the Court finds that Florida law allows a Chapter 7 trustee to bring an alter ego action against a debtor's principals if they manipulated the corporation specifically to injure the corporation's creditors.

In re Xenerga, 449 B.R. at 599-600(Emphasis supplied). See also Baillie Lumber Company, LP v. Thompson, 413 F.3d 1293, 1295 (11th Cir. 2005)(Standing to pursue an alter ego claim was guided by equitable principles and the equitable treatment of creditors under the Bankruptcy Code.).

9

Under this analysis, the key factors for a trustee to bring an alter ego action are (1) the debtor's abuse of separate entities or business forms, and (2) the action's remedial purpose to address the injury to creditors caused by the abuse. Even though the debtor in Xenerga was a corporation, therefore, it appears that the purpose of an alter ego claim may apply both to individual and corporate debtors, as long as the trustee shows that the debtor engaged in inequitable conduct by abusing separate entities to injure all of the debtor's unsecured creditors.

Similarly, the Court in Sigma-Tech Sales recently concluded that "[g]ranting a trustee standing not only aligns with the equitable principles rationalizing an alter ego claim, but also supports the purpose of the bankruptcy code by permitting the trustee the ability to recover assets belonging to the estate." In re Sigma-Tech Sales, Inc., 2016 WL 4224090, at 3. In Sigma-Tech Sales, the focus was on making the estate whole by recovering assets that should have been available for creditors. In other words, a bankruptcy trustee should have standing to pursue an alter ego claim if the claim seeks to remedy an injury to the debtor's estate, and the trustee's claims are limited in scope to property that the estate would have owned but for the abusive conduct. Id. at n.8. See also In re Bernard L. Madoff Investment Securities LLC, 2016 WL 4040799, at 22 (Bankr. S.D.N.Y.)(Florida law treats veil-piercing and alter ego claims as a remedy for injuries caused by the acts of the participants.).

In this case, the Plaintiff alleges that the Debtors abused the business forms of the Debtors' Entities for the purpose of removing assets from the Debtors' estate and avoiding the Debtors' obligations. (Doc. 3, ¶¶ 280-294). In the alter ego action, the Plaintiff seeks to redress the injury to the estate by recovering the removed assets for the benefit of the Debtors' creditors as a whole. Under these circumstances, the Court finds that the claim "properly references Florida law thus satisfying the second prong of the Icarus test." In re Sigma-Tech Sales, Inc., 2016 WL 4224090, at 3.

10

### B. The fraudulent transfer Counts

Counts 3 through 134 of the Amended Complaint are actions for the avoidance of fraudulent transfers. In the Motion to Dismiss, the Defendants request the dismissal of approximately 74 of the 132 Counts, for the reason that the Counts seek "to recover alleged fraudulent transfers of **non-debtor** property." (Doc. 168, p. 3)(Emphasis in original). According to the Defendants, the Counts allege that the Defendants "received transfers from non-debtor affiliates as opposed to the Debtors themselves." (Doc. 168, p. 7).

It appears that the transfers at issue involve assets that were initially transferred to one of the Debtors' Entities, as defined in the Amended Complaint, and subsequently transferred to the ultimate recipient of the asset. The Debtors' Entities, or intermediate transferees, are the subject of the Plaintiff's alter ego action. The purpose of the alter ego action is to determine whether the assets transferred to the Debtors' Entities should be considered property of the Debtors' bankruptcy estate. (Doc. 3, p. 64).

For the reasons discussed above, the Court has found that the Plaintiff has standing to assert the alter ego action, and therefore is denying the Defendants' Motion to Dismiss Count 1.

Accordingly, the Defendants' request to dismiss the fraudulent transfer claims should also be denied, because the Court cannot determine whether the property allegedly transferred from the Debtors' Entities to the Defendants was actually property of the Debtors, as required by the fraudulent transfer statutes, until the alter ego claim is resolved.

### C. Count 2 – Conspiracy

Count 2 of the Amended Complaint is an action for civil conspiracy. In the Motion to Dismiss, the Defendants contend that an action for conspiracy to commit fraudulent transfers is not recognized

11

under either the Bankruptcy Code or Florida law, and that Count 2 should be dismissed. (Doc. 168, p.

3).

Count 2 was previously dismissed in an Order that was entered on April 23, 2014, on fourteen

prior Motions to Dismiss Designated Counts of the Amended Complaint. (Doc. 95).

As set forth in that Order, a plaintiff must specifically allege the "who, what, where, when, how of

the alleged conspiracy," and also specify each defendant's participation in the conspiracy, in order to

state a claim for civil conspiracy. (Doc. 95, p. 7)(citing In re Palm Beach Finance Partners, L.P., 488

B.R. 758 (Bankr. S.D. Fla. 2013)). Count 2 of the Amended Complaint failed to satisfy the standard.

> In this case, the Plaintiff alleges in Count 2 of the Amended Complaint that the Defendants "conspired with one another to construct and perpetuate the Fraudulent Transfer Scheme" for the purpose of advancing their collective financial interests. (¶ 297). The Plaintiff also alleges that the Defendants received fraudulent transfers from the Debtors and the Debtors' Entities in connection with the Scheme, with the intent to defraud the Debtors' creditors. (¶ 298).

> . . .

> Count 2 of the Amended Complaint alleges only a global agreement among all of the Defendants to engage in numerous transfers. The Amended Complaint does not specifically allege the content of the agreement or the details of the conspiracy, and does not specify each Defendant's participation in the conspiracy.

(Doc. 95, pp. 7-8). Consequently, the Court found that the allegations were not sufficient to state a

claim for civil conspiracy, and dismissed Count 2 of the Amended Complaint.

## Conclusion

This case is before the Court on a Motion of eight Defendants to Dismiss Various Counts of the

Plaintiff's First Amended Complaint.

The Plaintiff filed the Amended Complaint to avoid a number of transfers and to obtain other

relief, based on an alleged Fraudulent Transfer Scheme involving thirty-seven Defendants.

12

Count 1 of the Amended Complaint is an action for alter ego liability. The Plaintiff has standing to bring the alter ego action, because (1) the Plaintiff asserts the cause of action on behalf of the estate as a claim common to all creditors, and because (2) the claim is allowed by Florida law. Consequently, the Defendants' Motion to Dismiss Count 1 should be denied.

Counts 3 through 134 of the Amended Complaint are actions for the avoidance of transfers, and the Defendants request the dismissal of approximately 74 of the avoidance Counts. The Defendants' request to dismiss the fraudulent transfer claims should be denied, because the Court cannot determine whether the property allegedly transferred to the Defendants was property of the Debtors, as required by the fraudulent transfer statutes, until the alter ego claim is resolved.

Count 2 of the Amended Complaint is an action for civil conspiracy. The Court previously dismissed Count 2, because the Amended Complaint does not specifically allege either the details of the conspiracy or each Defendant's participation in the conspiracy.

Accordingly, the Motion to Dismiss should be denied as to Count 1 and the fraudulent transfer Counts, and granted as to Count 2 of the Amended Complaint.

Accordingly:

**IT IS ORDERED** that:

1. The Motion to Dismiss Various Counts of First Amended Complaint for Failure to State a Claim upon which Relief Can Be Granted and Lack of Standing (Doc. 168) is denied as to Count 1 and the fraudulent transfer Counts of the First Amended Complaint for Avoidance of Transfers, for Damages, and for Other Relief.

2. The Motion to Dismiss Various Counts of First Amended Complaint is granted as to Count 2 of the First Amended Complaint, and Count 2 of the First Amended Complaint is dismissed.

13

**DATED** this 12 day of October , 2016.

## BY THE COURT

PAUL M. GLENN
United States Bankruptcy Judge